# APPENDIX.

PROVIDENCE, SEPTEMBER TERM, 1850.

---

WILLIAM P. DOCKRAY v. JAMES P. DOCKRAY.

2  547
2   43
2  556
11  532
13  171
2  547
16  598

A voluntary assignment of all the property of a debtor for the benefit of creditors, with preferences in favor of certain creditors, and with a provision, that no creditor shall receive any dividend or profit from the assignment, except upon the condition that he executes a discharge in full of all his claims against the assignor, and that the dividends of the creditors who refuse such a discharge shall result to the assignor, is valid in Rhode Island.

Assumpsit. The writ in this case was served January 17, 1848, in foreign attachment, upon John D. Brown and Edward H. Hazard. It appeared by the affidavits of the garnishees, that they were the assignees of all the real and personal estate of the defendant, under a deed of assignment dated July 27, 1847, for the benefit of his creditors. The deed, after providing that the expenses of the assignment should be first paid out of the proceeds of the assigned property, contained the following clauses, to wit;

72

*Secondly.* The said John D. and Edward H. shall next pay and satisfy in full the respective debts which I owe to the Rhode Island Union Bank upon a note signed by me and payable to my mother, Mary P. Dockray, and endorsed by her, for One Thousand Dollars, to John D. Brown, for about Twelve Hundred Dollars; and if said proceeds be not sufficient, then rateably.

*Thirdly.* The said assignees shall, after having done and performed the several things hereinbefore required, with the surplus, if sufficient, pay and satisfy the respective debts in full which I owe to T. J. Benedict & Co., Amos N. Beckwith, Nehemiah Dodge, Jr., and John W. Butts, and if said surplus be not sufficient, then the said assignees shall divide the same among said creditors in proportion to their respective demands.

*Fourth.* The said assignees, after having done and performed the several things hereinbefore required, shall divide the surplus, if any remaining in their hands, equally among all my creditors, in proportion to their respective demands :

Provided, however, that such of the creditors of me, the said Dockray, as do not, within three months from the date hereof, execute and deliver to said assignees a full discharge of their claims and demands against me, the said assignor, shall not be entitled to or receive any dividend or profit under this deed of assignment, but the dividends on the claims and demands of such creditors shall be paid over to the aforesaid assignor, or to such person or persons as he shall appoint."

The affidavits further showed, that the assignees had sold all the real and personal estate of the defendant, except his reversionary interest in certain bank stock, and applied the proceeds to the payment of the expenses of

the assignment and of the debt of John D. Brown, pre-
ferred by the second clause of the assignment, and that
this debt was paid and cancelled before the service of the
plaintiff's writ.   That the defendant's interest in twenty-
two shares of the capital stock of the Rhode Island Union
Bank remained unsold, and that said stock stood pledged
for the payment of a note discounted at said Bank for One
Thousand Dollars, signed by J. P. Dockray and endorsed
by Mary P. Dockray, his mother, (who was entitled to
the dividend on said stock during her life) which note
was preferred in said deed of assignment and directed to
be paid ; which stock it was said would not sell for more
than enough to pay this debt, with interest, and the re-
mainder of the expenses of the assignment, and was not
subject to attachment.

For the plaintiff it was contended, in the opening.
This assignment is void, for causes apparent on the face
of the instrument, and, being void, the assigned property
is subject to attachment in the hands of the assignees.
The utmost a debtor can legally do is to make a general
assignment of all his property, with preferences, and re-
quiring those who take under the assignment to discharge
him within a reasonable time.  When he adds to these the
claim to retain portions of his property not exempt from
attachment by law, that claim, together with preferences
and the requisition of a release of the whole debt in con-
sideration of the fraction paid, makes the instrument a
fraudulent attempt to tie up property, to hinder, delay,
and defraud creditors, and it will be set aside as void.   2
Kent's Com. 534, and the cases cited in note C.   In the
case of *Austin* v. *Bell,* (20 Johns. 442,) a stipulation that
" in case any of the creditors named in the several classes

should not, within the time limited, become parties to the assignment, the grantees should pay to the grantors the proportions of such of the creditors who neglect or refuse to execute these presents," was held to avoid the assignment. In *Hyslop* v. *Clarke*, (14 Johns. 458,) a reservation of the dividends of non-releasing creditors, subject to the order or appointment of the debtor, was held to vitiate the whole instrument. See also *Learing* v. *Bronkerhoff*, (5 Johns. Ch. R. 339,) and the remarks of Chief Justice MARSHALL in *Brashear* v. *West*, (7 Pe-· ters, 603.)

For the defendant and garnishees it was contended. This assignment is sought to be avoided, because it contains a resulting trust to the assignor. The clause was of no practical importance to the assignor, because there was no probability that the class of creditors of whom a release was required would be reached before the funds were exhausted. The plaintiff's counsel cite 2 Kent. p. 534, and the cases there referred to. These cases prove that in some States an assignment with a clause requiring a release from creditors as a condition of their receiving a dividend, will be void. We do not dispute that such is the law in New York, Connecticut, Illinois, Missouri, and perhaps in other States. That the opposite doctrine is the law in England, (where the Bankrupt Act has not interfered) in Massachusetts, (prior to the Insolvent law) in Pennsylvania, in New Hampshire, and in the Supreme and Circuit Courts of the United States, and in this State, is equally indisputable. This was so decided in this State twenty years ago in the case of *Burgess* v. *Boone*.* (See Angell on Ass. p.

---

* The case of Thomas M. Burgess v. Thomas G. Boone was decided at the March Term, 1830, in Providence County. The writ was served by

Dockray *v.* Dockray.

112 and 128.) Under the sanction of this decision numerous assignments with this clause, drawn by eminent counsel, have been executed, and are on record, and a decision adverse to this common practice and belief in the law as settled would shake the titles of manufacturing property to the amount of hundreds of thousands of dollars. The decision *Burgess* v. *Boone,* was grounded on the judgment of STORY, J. in *Halsey et al.* v. *Whitney et al.* (4 Mason, 206.) The assignment in that case contained a provision identical with that in this. *The funds were to be divided among certain creditors named in a schedule in proportion to the amount which the debts of each bore to the whole amount in the schedule.* The creditors, or a portion of them, became parties to the assignment, and "accepted the premises, in full payment and satisfaction and discharge of all their claims and demands." The judges held that the weight of authority was in favor of the stipulation for the release, and sustained the assignment. This decision was followed by *Andrews* v. *Ludlow,* (5 Pick. 28,) in which the facts disclosed in the answers of the trustees are almost identical with those in the case at bar. It was an assignment for creditors generally, with a stipulation for a release and a reservation of the surplus and of the dividends of those creditors who should not execute the release. And the

attaching the real estate which Boone had assigned to Christopher Spink, and the deed of assignment was set up in defence.

The clause objected to in the assignment was in these words : "Fourthly ; After executing the foregoing trusts, (payment of preferred debts, &c.) " to pay and discharge out of the surplus funds, if any there may be, all my other just debts and demands, of every kind, *rateably and proportionably, if such claims shall be presented within six months from the date hereof, and a final discharge given by those presenting them.*" And fifthly, to pay over the surplus to the assignor, and also to "reconvey the real estate, should a sale of the same not be necessary in the payment of said claims."

Court, distinguishing this case from that of *Harris et al.*
v. *Summer*, (2 Pick. 129,) in which a large provision was
secured to the debtor unconditionally, on the ground that
here the reservation was contingent, and not inserted for
the benefit of the debtor, held that it did not vitiate the
instrument. This doctrine was again confirmed in *Lup-
ton* v. *Cutter*, (8 Pick, 298,) and is also the doctrine of
the English cases. *Jackson* v. *Lomas*, (4 Term, 166.)
Such settlements are almost as frequent in England as by
the Bankrupt Act itself. The debtor cannot make pre-
ferences directly to certain specified creditors, because
that would contravene the Bankrupt Act; and to do it
indirectly, as by dividing his property among such as
should release by a given day, would be equally objec-
tionable. But if he divides his property equally, he may
require a release, and the Bankrupt Act will not interfere.
The dividends of those who refuse to release cannot be
divided among the releasing creditors, for that would be
to create a preference, and they must of course result to
the assignor, and a clause in the assignment to that effect
would simply express what the law implies. See *The
King* v. *Watson*, (3 Price, 6.) Such an assignment is
more equitable than one which appropriates all the prop-
erty to the releasing creditors; for if any, from accident,
neglect, or other cause, do not come in within the stipu-
lated time, their chance is not gone, for the dividend re-
mains at the disposal of the assignor, and it is as fair to
suppose that he will use it to settle with his creditors, as
for a provision for himself. The assignment does not
deprive the creditor of any remedy, and if he elects to
pursue his remedy at law, he can compel the application
of the surplus to the payment of his debt. Without
doubt, the assignor cannot reserve a provision to himself,

but how can he be said to do this, when, by releasing, his creditors take all, so that any resulting interest depends, in fact, upon their allowance.

The answers of the garnishees in the present case disclose the fact that the funds received by the assignees were nearly all applied to the payment of the debt of one of them previous to the attachment, and that the balance is insufficient to cover the expenses of executing the assignment, and in such a case the property is protected from attachment. *Andrews* v. *Ludlow*, (5 Pick. 28.) *Ames* v. *Blunt*, (5 Paige Ch. Rep. 13.) *Everett* v. *Walcott*, (15 Pick. 94.)

Arguments in reply. It is not denied that a debtor may make an assignment with preferences and requiring a release from his creditors ; but he cannot annex any other condition by which anything shall result to himself until the releasing creditors have been paid in full. The counsel for the defendant seem to argue these two questions in one, and under the cover of the one which is well settled, familiar and not denied, to attempt to carry the other. It is to the reservation in this instrument that we object and not to the provision for a release merely. The answer made is, that a different rule has prevailed in this State, and Angell on Assignments, pp. 112 & 128, is cited. On page 112, Mr. Angell is speaking of the validity of a clause requiring a release and the Rhode Island decision is referred to as asserting its validity ; and on page 128, of a reservation of the surplus after a payment of all the creditors who accept the assignment. The case of *Burgess* v. *Boone*, sanctions the payment to the assignor of the residue, " after paying all the foregoing debts and discharging said trusts." The assignor takes nothing until

the preferred creditors and those who accept of his assignment have been paid, and in this the case confirms the law as understood and administered in this and other States, and as declared in *Halsey, et al.*, v. *Whitney, et al.*, which has been stated to be the authority on which it was decided. The restoration in Halsey v. Whitney, was of " any ultimate surplus, (see marginal note,) after payment of *all debts.*" Now, that is precisely what we say the debtor may reserve and that only. The practice in this State said to be based upon these two decisions, has been for the most part conformable to them. An examination of the assignments on the city records shows, that, with a single exception, they were drawn and construed upon the supposition that those who accept the terms of the assignment take all the property and the surplus only after their payment in full, results. And if this were not so, the practice of counsel, however eminent, passing *sub silentio*, can never be appealed to as authority in Courts whose business it is to correct the errors into which counsel have fallen. The case of *Andrews* v. *Ludlow*, which is against us, was decided in the absence of the Chief Justice, and was a case in which this point was but slightly considered. The Court held that the clause was not *conclusive evidence* of an intention to make a provision for the assignor, and that in that case it was inserted to promote a speedy settlement. The Court assume to go behind the legal effect of the language into the circumstances to determine the interest of the assignor, and if that case can be considered as law, it must be considered as resting on its own peculiar circumstances. The case of *Lupton* v. *Cutter*, does not touch this case, and not a single English authority is produced to sanction such a provision. It is said the assignor may use the·

resulting dividends to pay his debts and that the assign-ment does not deprive the creditors of any legal remedy. But what need of such assignments for honest men? What inducement is there for a creditor to release except his distrust of the will of the debtor to pay him the same sum, out of the assignment as in it. He reserves to himself the ability and intimates the dishonest intention not to do so, and by that intimation coerces his creditor to re-ceive his *pro rata* however small and to give a complete release.

But it is said the property assigned has been *bona fide* appropriated according to the assignment and the assignee cannot be compelled to restore it. If such a doctrine is true in any case, it does not apply where the assignment is fraudulent on its face; nor where, as in this case, the assignee himself is the creditor who has been paid and has not yet executed the release which entitles him to the dividend.

*Bradley* for the plaintiff.

*Jenckes* for the defendant.

The opinion of the Court was delivered by

GREENE, C. J. The assignment in the present case contains a provision by which the dividends of the credi-tors who do not, within three months from the date thereof, release the assignor, shall be paid over to the as-signor or such persons as he shall appoint. The question is, whether this provision avoids the assignment, under the circumstances of this case; the assignor having made a full surrender and assignment of all his property for the payment of his creditors, and this provision being inserted,

not with any fraudulent purpose of securing the property for the benefit of the debtor, to the exclusion of the creditors, under cover of the assignment, but for the purpose of obtaining a discharge from his creditors, as an equivalent for the surrender and assignment of all his property for the payment of his debts.

We do not consider the validity of such an assignment, under such circumstances, as an open question in this State.

By our law, if the debtor make a full and honest surrender of all his property for the payment of his creditors, and assigns it that it may be so applied, he has a right to require of them a release as the condition of payment, and to reserve to himself the dividends of those who refuse to release, such requirement and reservation not being made with the fraudulent design of securing the property for the benefit of the debtor to the exclusion of the creditors, but to obtain from them a discharge of their claims.

We do not mean to say such a provision in a debtor's assignment, even under such circumstances, is regarded by our law with favor, but it is nevertheless valid.

The decision in *Burgess* v. *Boone*, as far back as 1830, was understood by the profession to establish the validity of such an assignment, and the practice of the bar has conformed to it as settled law ever since.

Indeed, the decision of that case was in conformity to the previous practice, and what was before considered as the settled law of the State.

The counsel for the plaintiff considers the assignment in that case as reserving to the assignor only what remained after payment in full to all the releasing creditors, and therefore, he contends, the decision is inapplicable to the case at bar.

The opinion of the Court was delivered by the late Chief Justice EDDY; it was never published, and the manuscript, after much search, cannot now be found; but it has always been understood and acted upon as establishing the validity of an assignment like the present.

To reverse this decision, as understood and acted upon for so long a time, might disturb titles to a large amount of real estate.

The language of the assignment in that case is not free from ambiguity, and whatever may be the construction, we feel ourselves bound by the decision, as understood and acted upon ever since it was made.

But, assuming the assignment in that case to be as the plaintiff's counsel contends, we think the difference in principle between such an assignment and the one before us is not material.

Both exact from the creditor a release as the condition on which he can come in ; the difference is in the reservation, the one reserves after payment in full to the releasing creditors, thereby creating a preference in their favor, the other after paying such creditors their pro rata dividend.

Under one form the dividends of the refusing creditors remain the property of the debtor, and a fund for the payment of the refusing creditors. And if the circumstances of the case are fair on the part of the debtor in making the assignment, we see no reason to suppose the fund will not be so applied.

Under the other form a preference is created in favor of the releasing creditor, who may take all, and thus the refusal to release by the other creditors may work a forfeiture of all claim to the debtor's property.

In *Andrews* v. *Ludlow*, (5 Pick. 28,) the assignment

was like the one under consideration; the Court said, such a reservation may be some evidence of fraud, but it is not conclusive, and may be capable of satisfactory explanation, and held the assignment, under the circumstances in that case, valid.

But we wish to be understood as putting the decision of this case upon the practice and decisions of our own State.